UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ELAINE SERRANO, | |
| Plaintiff, | |
| v. | Case No. 2:24-CV-18 JD |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**OPINION AND ORDER**

Plaintiff Elaine Serrano appeals the denial of her claims for supplemental security income under Title XVI of the Social Security Act. For the reasons below, the Court will remand this case to the Agency for additional consideration.

A. **Background**

Ms. Serrano applied to the Social Security Administration for supplemental security income, alleging that she became disabled in December 2020. She was then 36 years old.

Plaintiff claimed disability due to chronic pain, neuropathy, depression, and anxiety. She reported ongoing pain in her back, neck, and knees. After a car accident in August 2021, she experienced shoulder and back pain, which was treated with medications and physical therapy. By September 2022, her back pain worsened in the mornings but was manageable during the day, and her medications were increased. Throughout 2021 and 2022, she attended psychological and physical consultative exams, receiving diagnoses of generalized anxiety disorder, PTSD, and chronic pain. She also complained of neuropathy.

Ms. Serrano's claim was rejected, leading to a review by an Administrative Law Judge ("ALJ"), who also denied her claim. (R. at 36.)

The ALJ employed the five-step process to determine whether Ms. Serrano is disabled. At Step 2, the ALJ determined that Ms. Serrano suffered from the following severe impairments: "degenerative disc disease (DDD) of the cervical, thoracic, and lumbar spine; neurodevelopment disorder; posttraumatic stress disorder (PTSD), anxiety, and bipolar disorder with depression." (R. at 13.) The ALJ ruled out multiple other conditions from being severe. Among those were headaches and migraines:

> The claimant has reported headaches first noted in August 2021, as well as migraines noted in May 2022 and worsening in June managed on sumatriptan as needed, I have considered the relevant Social Security Ruling (SSR) 19-4p as pertaining to primary headache disorders. [Ms. Serrano's] primary care Nurse Kosby had diagnosed common migraine without aura and without intractable migraine and without status migrainosus. However, there is no diagnostic imaging or rule-out evaluations or diagnostics. The claimant does have cervical and neck pain; other factors may also contribute to headaches (e.g., Covid-19 infection, flu, or other nonsevere illnesses). Accordingly, the claimant's headaches/migraines are considered independently and together with their symptomatic impacts on the claimant's functioning as caused by other associated impairments.

(R. at 15 (citations to the record omitted).)

At Step 4, the ALJ determined Ms. Serrano's residual functional capacity ("RFC")[1] finding that she can

> perform light work as defined in 20 CFR 416.967(b)[2] except lifting/carrying twenty pounds occasionally and ten pounds frequently; push/pull as much as she can

---

[1] "The RFC reflects 'the most [a person] can still do despite [the] limitations' caused by medically determinable impairments and is assessed 'based on all the relevant evidence in [the] case record.'" *Cervantes v. Kijakazi*, No. 20-3334, 2021 WL 6101361, at *2 (7th Cir. Dec. 21, 2021) (quoting 20 C.F.R. §§ 404.1545, 416.945(a)).

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also

>lift/carry; sit, stand/walk for six hours, with sit/stand option; and she would be off task less than 10% of the workday. The claimant can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, crawl. The claimant can never work at unprotected heights. The claimant can perform simple, routine and repetitive tasks but not at a production rate pace (e.g., assembly line work); and she can tolerate occasional changes in tasks or demands.

(R. at 20.)

In light of this RFC, the ALJ determined that Ms. Serrano is unable to perform any past relevant work. (R. at 27.) At the final step, the ALJ found that, considering Ms. Serrano's age, education, work experience, and the RFC, there are jobs in significant numbers in the national economy that she can perform (a router, a collator operator, and an inspector/hand packager). The ALJ arrived at this conclusion after questioning a Vocational Expert at the hearing.

After the Appeals Council denied Ms. Serrano's request for review of the ALJ's decision, she appealed to this Court.

**B.    Standard of Review**

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019)). This evidence must be

---

do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567.

"more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### C.  Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to

determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;
4. Whether the claimant can still perform past relevant work; and
5. Whether the claimant can perform other work in the national economy.

See *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**D. Discussion**

In her appeal, Ms. Serrano asserts that the ALJ's RFC determination is not supported by substantial evidence because he fashioned the RFC, including the off-task limitation, solely on the basis of his own interpretation of medical data rather than seeking to obtain medical opinions. She also argues that the ALJ disregarded her neuropathy and migraines in reaching his decision.

An ALJ must determine a claimant's RFC on the basis of the evidence in the record. *See Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008); 20 C.F.R. § 404.1546(c). The ALJs may rely on both medical and lay opinions in fashioning the RFC, *see Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995), but they're not qualified to interpret medical data, *see Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (". . . ALJs are required to rely on expert opinions instead of determining the significance of particular medical findings themselves.").

The ALJ discounted the opinion evidence of State Agency Disability Determination Services Consultants Dr. B. Whitley, Dr. J. Sands, Amy Johnson, Ph.D., and Donna Unversaw, Ph.D. Dr. Whitley and Dr. Johnson reviewed Ms. Serrano's application for benefits and found that none of her physical or mental impairments, respectively, were severe. (R. at 26.) In turn, Dr. Sands and Dr. Unversaw opined the same on reconsideration. (*Id*.) Moreover, none of these consultants provided work limitations that might be useful in constructing an RFC. According to the ALJ, these opinions were based on limited medical information in the record. The evidence obtained in the proceedings before the ALJ established that Ms. Serrano was more limited than the consultants opined. As a result, and without input from the medical consultants, the ALJ found that Ms. Serrano is "limited to light work with the additional postural and environmental limitations, as well as with a sit/stand option. Moreover, the claimant's chronic pain and

6

complicating factors from her nonsevere problems as well as her mental health triggers would cause her to be off task less than 10% of the workday." (R. at 26–27.)

As well, the ALJ considered the opinions of Consultative Examiners, Dr. M. Siddiqui and Gary Durak, Ph.D. The ALJ found their opinions to be "somewhat persuasive" in relation to the clinical assessments and "not persuasive" due to their lack of providing their opinions regarding Ms. Serrano's work limitations applicable to an RFC:

> Consultative examiner Dr. M. Siddiqui, M.D., in August 2021 noted the claimant's intermittent back pain as not radiating and without numbness; Bell's palsy by history (reportedly diagnosed in 2020, affecting her left face as well as tingling of the face and arm); and left shoulder pains intermittently reportedly with MRI that showed ligament problems; as well as anxiety and PTSD. Dr. Siddiqui opined that the claimant should follow up with her clinicians for care but otherwise did not give an opinion about the claimant's residual functional capacity.
>
> Consultative examiner Gary Durak, Ph.D., in May 2021 diagnosed the claimant's generalized anxiety disorder as mild and opined that the claimant would be able to manage her own funds.
>
> These consultative exam reports are somewhat persuasive. These examiners saw the claimant not in a treating context but provided detailed explanations of their opinions based on the objective findings as well as subjective reports from the claimant. **However, these consultants did not give an opinion about the claimant's residual functional capacity regarding her ability to perform work-related tasks.** In this regard, their opinions are not persuasive. Overall, their objective findings and explanations of findings are accorded some partial consideration to the extent consistent and can be supported.

(R. at 27 (emphasis added).)

Without any experts opining about Ms. Serrano's work limitations, the ALJ was left with an evidentiary deficit that he could not substitute with his lay opinion. Although, as the Commissioner points out, "[t]he RFC determination is a legal decision rather than a medical one" (Def.'s Resp. Br., DE 17 at 5 (citing 20 C.F.R. § 404.1546(c)), the ALJ may not interpret raw medical data. *Moon*, 763 F.3d at 722. Nor may the ALJ, in the absence of relevant medical opinions regarding work limitations, "construct a 'middle ground' and come up with [his] own . .

7

. RFC assessment without logically connecting the evidence to the RFC findings." *Darlene M. v. Kijakazi*, No. 19 CV 6389, 2021 U.S. Dist. LEXIS 160711, at *15 (N.D. Ill. Aug. 25, 2021) (quoting *Mark J. v. Saul*, No. 18 CV 8479, 2020 U.S. Dist. LEXIS 11096, 2020 WL 374676, at *5 (N.D. Ill. Jan. 23, 2020)).

As well, the Court cannot discern the logical bridge from the evidence to the ALJ's conclusion as to the off-task limitations in the RFC. While the ALJ summarized numerous medical records, "the act of summarizing the evidence is not the equivalent of providing an analysis of the evidence." *Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013). Of particular consequence is the ALJ's unexplained limitation that Ms. Serrano "would be off task less than 10% of the workday." (R. at 20.) The Vocational Expert testified that Ms. Serrano would be precluded from maintaining unskilled work in the national economy if she were off task 15% of the time. (R. at 79.) In other words, if Ms. Serrano's actual limitations put her off-task for an additional twenty-four minutes in an eight-hour workday, she would be considered disabled. Despite the importance of that limitation, the ALJ's decision provides no reasoning that would allow the Court to understand how he reached his off-task limitation. Nor can the Court infer this limitation from the record as a whole. As the ALJ himself recognized, Ms. Serrano has a number of severe limitations (degenerative disc disease of the cervical, thoracic, and lumbar spine; neurodevelopment disorder; PTSD; anxiety, and bipolar disorder with depression) and has been diagnosed with migraines. While there's evidence that these conditions are being treated by medical care providers, there's no certainty in any of the records about the extent of Ms. Serrano's ability to stay on task during a workday. In addition, Ms. Serrano's mental condition appears to fluctuate: she attempted suicide in 2019 and went to the ER with thoughts of suicide in 2022 but was treated in between those episodes and since; and she has suffered from panic

8

attacks and sleep problems throughout the relevant period. Moreover, as the ALJ acknowledged, Ms. Serrano's "ongoing multitudes of physical and mental symptoms are indicative of psychogenic triggers." (R. at 31.) In short, the record is not so unambiguous that the 10% off-task limitation is readily recognizable. Instead, the Court is left with the strong impression that the ALJ arrived at his determination by playing doctor—because he imposed the off-task limitation without the benefit of medical opinion—which he may not do. *See Seamon v. Astrue*, 364 F. App'x 243, 247 (7th Cir. 2010) ("An ALJ may not 'play doctor' by substituting his opinion for that of a physician.") (quoting *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 570 (7th Cir. 2005)). Because the ALJ constructed the RFC without the benefit of medical opinion and failed to explain why he imposed the limitations in the RFC, particularly as to the amount of time Ms. Serrano might be off task, this Court must remand.

The Court is also struck by the potential error committed by the ALJ because he relied on a February 2022 MRI report of the spine and thyroid gland that had not been subjected to an expert opinion (R. at 25) and failed to account for an April 2022 MRI report of the left knee (R. at 1993–94.) The Commissioner does not contest those conclusions. As for the MRI of the spine, the ALJ restated the report, which without an expert's opinion remains to a layperson the "mumbo jumbo" against which the Seventh Circuit cautions. *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) (""Instead, playing doctor (a clear no-no, as we've noted on numerous occasions, the administrative law judge summarized the results of the 2010 MRI in barely intelligible medical mumbo jumbo . . . .") (cleaned up). So, the meaning of this MRI report, and how it fits with all other evidence, remains uncertain. The same is true of the MRI of the knee. The Commissioner asks the Court to ignore this MRI because the imaging was "at-most mildly abnormal" (Def.'s Resp. Br., DE 17 at 6), but who is to say how that collectively impacts the

limitations in the RFC. While the report uses the words such as "normal" and "intact" it also states that there is "[s]mall suprapatellar knee joint effusion." Without an expert opinion, there's no telling whether the MRI findings support any of Ms. Serrano's claimed limitations and impacts the ALJ's RFC.

The Commissioner submits that this case is similar to *Durham v. Kijakazi*, 53 F.4th 1089 (7th Cir. 2022), where the Seventh Circuit found that the ALJ had not "interpreted results of 'highly complex' medical tests on his own," but "[r]elied, as he should, on the conclusion of the [plaintiff's] treating physicians." The Court disagrees. In *Durham*, the plaintiff argued that the ALJ relied on stale opinions of medical experts in issuing his decision, which were rendered unreliable by her subsequent hospitalization. The plaintiff asserted that the ALJ should have re-submitted her medical evidence for additional expert review in light of changed circumstances and the complexity of evidence. Since that did not happen, the plaintiff accused the ALJ of "playing doctor" when concluding that the earlier evidence did not establish disability. *Durham*, 53 F.4th at 1094. The Court of Appeals found the plaintiff's argument without merit because the ALJ did rely on the conclusions of the treating physicians and considered the most recent evidence:

> Some of [the plaintiff's] tests certainly were complex. But the ALJ did not attempt to interpret, on his own, the significance of any of these medical tests or procedures. Rather, he relied, as he should, on the conclusions of her treating physicians. The most recent evaluation performed by a cardiologist revealed that [the plaintiff] had "mild systemic disease, no acute problems, and no functional limitations." The same report indicated that she had no cardiac instability. Thus, [the plaintiff's] treating cardiologist did all of the interpretation of her exam and procedures; the ALJ simply restated those findings.

*Id.* at 1095. In other words, in *Durham* the ALJ relied on and restated the conclusions of the treating physicians who examined the plaintiff and interpreted the exam but did not rely on the underlying reports. Here, however, the Commissioner has identified no treating physician who

10

interpreted the MRIs. What's more, the MRIs themselves are only part of the problem, the greater issue being that the ALJ based Ms. Serrano's RFC determination on what amounts to a hunch that she would be off task less than 10% of the workday.

As noted above, Ms. Serrano also claims that the ALJ erroneously ignored her neuropathy and migraines in reaching his decision. Since the Court is remanding this case to the Agency based upon the ALJ's off task limitation, the Court need not address Ms. Serrano's other arguments. On remand, "the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The Court trusts that these matters will receive further consideration.

### E. Conclusion

For these reasons, the Court REVERSES the Agency's decision and REMANDS this matter to the Agency for further proceedings consistent with this opinion. The Clerk is directed to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: January 8, 2025

                                                          /s/ JON E. DEGUILIO
                                                          Judge
                                                          United States District Court